## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

BARETTA J. OLIVER, as personal
representative of Lester Oliver, Jr.;

        Plaintiff,

v.

LOCKHEED MARTIN CORPORATION;
and UNIVERSAL CITY PROPERTY
MANAGEMENT COMPANY III, LLC;

        Defendants.

Case No.: 6:23-cv-02291

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Baretta J. Oliver, as personal representative of Lester Oliver, Jr., sues Defendant Lockheed Martin Corporation and Universal City Property Management Company III, LLC ("Defendants") and alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this action against Lockheed Martin Corporation ("Lockheed Martin"), the owner and operator of weapons manufacturing facilities at 5600 Sand Lake Road, Orlando, FL 32819 ("Orlando Facility"), for damages resulting from Lockheed Martin's dangerous and reckless mismanagement of extremely hazardous toxins, including but not limited to, heavy metals, persistent environmental pollutants, and Volatile Organic Compounds ("VOC").

2.      Lockheed Martin's dangerous failures at the Orlando Facility occurred over decades. The Orlando Facility manufactures weaponry and associated

components and began operations in 1957. The operations at the Orlando Facility utilize chemicals that are among the most toxic to human health on earth, and require the utmost care and handling.

3.      Instead of carefully managing these toxins from the moment they arrived at the facility, and ensuring they were properly used, stored, and disposed of, Lockheed Martin stored toxins in leaking storage tanks, collected and transported waste materials in leaking underground piping systems, and dumped thousands of tons of highly toxic waste sludges into trenches dug throughout the Orlando Facility.

4.      Lockheed Martin's stunning indifference to environmental protection and human health resulted in staggering levels of contamination at the Orlando Facility. For instance, the EPA has set a regulatory limit of 5 parts per billion, and a goal of 0 parts per billion ("ppb"), for contaminants such as methylene chloride and trichloroethylene. Trichloroethylene has been detected in concentrations as high as 386,000 ppb in groundwater under the Orlando Facility. Methylene Chloride has been detected in concentrations as high as 213,600 ppb in groundwater under the Orlando Facility.

5.      Trichloroethylene and methylene chloride, like many of the contaminants Lockheed Martin dumped into the soil and groundwater at the Orlando Facility, are artificial chemicals that do not occur naturally. They are known as Volatile Organic Compounds because they are unstable and vaporize into the air from contaminated soil and groundwater. Once these chemicals are airborne, they can be inhaled and cause profoundly harmful effects to the human body.

2

6.     The contaminants Lockheed Martin dumped into soil, air and groundwater at the Orlando Facility damage virtually every human bodily system. These contaminants have intense effects on the central nervous system, cause blood disorders, are toxic to the liver, kidneys, skin, heart, and the immune system. These contaminants damage the respiratory system, skeletal system, reproductive system, and endocrine system, and cause birth defects and developmental disorders.

7.     Many of the contaminants Lockheed Martin dumped into soil, air and groundwater at the Orlando Facility are powerful carcinogens and cause a wide array of different cancers.

8.     The contaminants Lockheed Martin dumped into soil, air and groundwater at the Orlando Facility are harmful to humans through any route of exposure. They will damage human health if they are inhaled, swallowed, or touch the skin.

9.     The severe and widespread contamination at the Orlando Facility poses extreme risks to those who live and work nearby. Residents and workers in the area, including Plaintiff, have been exposed to this contamination by activities that cause these chemicals to become airborne and move offsite. Due to the volatile nature of the contaminants originating from the Orlando Facility, residents and workers nearby, including Plaintiff, have also been exposed to contaminants that have off-gassed from the soil and groundwater.

10.    After creating an environmental nightmare at the Orlando Facility, Lockheed Martin's subsequent efforts to treat contaminated soil and groundwater at

the Orlando Facility have perversely increased the risks of exposure and harm to those working and living nearby.

11.    Lockheed Martin installed numerous packed tower air strippers and air sparge systems designed to separate contaminants from millions of gallons of groundwater. Likewise, several soil vapor extraction systems were installed to remove contaminants from millions of tons of soil.

12.    These air strippers, air sparge systems, and soil vapor extraction systems do not destroy the contaminants, they merely induce a phase change which causes the pollutants to become gaseous. To protect residents and workers nearby from exposure, the air strippers and soil vapor extraction systems would have to collect the gaseous toxins in sealed collection systems.

13.    Astonishingly, Lockheed Martin failed to contain the gaseous toxins extracted from the soil and groundwater treatment systems, but instead expelled concentrated amounts of these harmful chemicals directly into the air that Plaintiff breathed.

14.    In doing so, Lockheed Martin addressed a situation which was already hazardous to Plaintiff, and other people working and living nearby, by recklessly increasing their risks and the amounts of exposure to the contamination at the Orlando Facility.

15.    Throughout all relevant times, Lockheed Martin also continued to engage in other operations at the Orlando Facility that caused numerous additional tons of

hazardous air pollutants and VOCs to enter the air every year and be inhaled by Plaintiff.

16. Over the years, Lockheed Martin sold certain parcels of the Orlando Facility, and near to the Orlando Facility, for redevelopment, further increasing the number of individuals who would be exposed to Lockheed Martin's contamination. After selling these parcels, Lockheed Martin remained responsible for and continued to engage in activities that caused its contamination in soil and groundwater to become airborne and inhaled by Plaintiff.

17. Universal City Property Management Company III ("UCPM") acquired certain contaminated parcels at the Orlando Facility previously owned by Lockheed Martin. After acquiring these parcels at the Orlando Facility, UCPM engaged in a joint venture with Lockheed Martin to continue the same and similar contamination activities, including air stripping, air sparging, and vapor extraction activities, on these parcels. These joint activities by UCPM and Lockheed Martin increased Plaintiff's exposure to Lockheed Martin's toxic wastes.

18. Plaintiff comes now seeking damages relating to the life changing and debilitating diseases they have suffered as a result of their exposure to contaminants released from Lockheed Martin's Orlando Facility.

## **PARTIES**

19. Plaintiff Baretta J. Oliver is the surviving wife and personal representative of the estate of Lester Oliver, Jr, who was exposed to, and consumed, harmful levels of

Lockheed Martin's contamination and suffered the injuries alleged herein. Lester Oliver, Jr, was a citizen of Florida at the time of his death.

20. Potential beneficiaries of a recovery for wrongful death of Lester Oliver, Jr, and their relationship to the deceased, are identified as follows:

a. The Estate of Lester Oliver, Jr c/o Baretta J. Oliver, as Personal Representative of the Estate of Lester Oliver, Jr;

b. Baretta J. Oliver, wife and survivor of Lester Oliver, Jr, pursuant to the Florida Wrongful Death Act.

c. Anthony Oliver, son and survivor of Lester Oliver, Jr, pursuant to the Florida Wrongful Death Act.

d. Lezlee Oliver, daughter and survivor of Lester Oliver, Jr, pursuant to the Florida Wrongful Death Act.

e. Lela Wilson, daughter and survivor of Lester Oliver, Jr, pursuant to the Florida Wrongful Death Act.

f. Patricia Oliver, sister and survivor of Lester Oliver, Jr, pursuant to the Florida Wrongful Death Act.

g. Annie Lee Arnett, sister and survivor of Lester Oliver, Jr, pursuant to the Florida Wrongful Death Act.

h. Lavonn Crumpler, Cayman Gordan, Talia McGee, and Malcom Payne Jr. grandchildren and survivors of Bradly Paul Brewer, Sr., pursuant to the Florida Wrongful Death Act

6

21.     Defendant Lockheed Martin Corporation is a Delaware corporation with its headquarters and principal place of business at 6801 Rockledge Drive, Bethesda, Maryland 60093. At all relevant times, Lockheed Martin and its predecessors in interest in law and fact owned and operated the Orlando Facility.

22.     Defendant Universal City Property Management Company III, LLC ("UCPM") is a Delaware limited liability company. Its sole member is Fourth Quarter Properties XLIX, LLC. Fourth Quarter Properties XLIX, LLC is a Georgia LLC with its principal place of business at 49 East Aviation Way, Newnan, Georgia 30263.The sole member of Fourth Quarter Properties XLIX, LLC is Jeffrey Montgomery. Jeffery Montgomery is a citizen of Georgia.

**JURISDICTION AND VENUE**

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1442(a)(1) because Lockheed is a federal contractor performing Government contracts.

24.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

25.     This Court has jurisdiction over Lockheed Martin because Lockheed Martin operates the Orlando Facility in this District. Through its regular business operations in this District, Lockheed Martin intentionally and regularly avails itself of the markets and jurisdiction in this District, conferring this Court with personal jurisdiction over Lockheed Martin.

26.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1) and (2) because a substantial part of the events and omissions giving rise to this action occurred in this District, Defendant's operations in this District caused contamination to be emitted within this District, causing harm to Plaintiff and those residing and working in this District.

**STATEMENT OF FACTS**

**A.     THE ORLANDO FACILITY**

27.     The Orlando Facility was built and began operations in 1957. The facility was initially owned and operated by the Martin Company, which became Martin Marietta in 1961. In March 1995, Martin Marietta and Lockheed Corp. merged to become Lockheed Martin.

28.     The facility occupies a site approximately 2.5 miles by 1.8 miles between Sand Lake Road to the north, Bee Line Expressway to the south, and Universal Boulevard (formerly known as Republic Drive) to the west. It is approximately a half mile from Sea World and a mile from Universal Studios (see Figure A).



(Figure A—The Orlando Facility)

29.   Throughout the course of its operations, the Orlando Facility has been used to manufacture heavy weaponry and artillery, including nuclear capable Pershing ballistic missiles, nuclear capable Sprint antiballistic missiles, Walleye and Bullpup guided missiles, Lacrosse and Patriot surface to air missiles, and Hellfire air to surface missiles. The facility also produced communications and microelectronics systems, processed and reproduced photographic imagery, and engaged in plating and micro-plating activities. Lockheed Martin serviced and modified helicopters and armored vehicles at the facility and operated a two-mile long laser target range. Other areas of

9

focus at the Orlando Facility include electro-optics, smart munitions, anti-armor, and air defense technologies.

30.    Since beginning operations at the Orlando Facility, Lockheed Martin has been storing, utilizing and disposing of toxic chemicals for process operations. These operations have continued to this day, and result in the generation and emission of numerous tons of hazardous air pollutants and VOCs each year.

**B.    LOCKHEED MARTIN'S TOXIC MISMANAGEMENT**

31.    The operations at the Orlando Facility generated dangerous wastes including metal cuttings and scraps, oils and greases, electroplating solutions and sludge, metallic hydroxide sludge, acid and alkali solutions, cyanide, chromate rinse waste, spent acid solutions, waste-cutting oils, and various solvents used to degrease machinery and weaponry. Additionally, the Orlando Facility stored large volumes of chemicals to be used in the facility's operations.

32.    The chemicals stored and used at the Orlando Facility, and the wastes generated by the facility's operations, are extremely dangerous to human health. The utmost care and attention is required to ensure that these materials are properly stored, transported, collected, and disposed.

33.    Because of the danger inherent to the toxins used at the Orlando Facility, the risks posed to human health can never be eliminated. However, the risks of exposure can be greatly exacerbated if these toxins are mismanaged, as they were by Lockheed Martin.

34.     Lockheed Martin's storage, transportation, collection, and disposal practices at the Orlando Facility were outrageously and recklessly indifferent to human health.

35.     The Main Plant area, at the northern portion of the Orlando Facility, has been involved in electroplating and waste treatment operations since becoming operational in 1958. The electroplating operations involved heat treatment, vapor degreasing, electro/electroless plating of chromium, copper and nickel into various components, and the chemical conversion coating of aluminum. Wastewater treatment operations consisted predominantly of the treatment of electroplating rinse water.

36.     Since 1958, electroplating operations have included an initial degreasing step which utilized a solvent bath of either trichloroethylene ("TCE") or tetrachloroethylene ("PCE") and 1,1,1-trichloroethane ("Methyl Chloroform"). Cyanide was then used in plating bath operations. Acid and alkaline rinse water wastes from the plating operations were neutralized with concentrated sodium hydroxide or sulfuric acid. Hexavalent chromium was a byproduct of these operations as well. The sludges remaining from these operations were pumped to a sludge storage tank. Cyanide wastes were transferred to cyanide captive pits and batch tanks.

37.     The initial system design at the Orlando Facility collected plating operation wastes in concrete troughs that transferred the wastes to captive pits. These troughs leaked into underlying soils for many years, perhaps as early as the late 1950's. Further, lines carrying solvents to collection and treatment systems leaked, causing further contamination.

11

38.     The contamination underneath and surrounding the Main Plant is extensive, both in soil and groundwater. Multiple additional sites of soil and groundwater contamination exist at the facility within close proximity to the Main Plant.

39.     Beginning in 1959, Lockheed Martin received and stored hazardous materials and toxic chemicals at the northwest boundary of the Orlando Facility, adjacent to Sand Lake Road. The hazardous materials and toxic chemicals stored in this area were repeatedly mismanaged by Lockheed Martin, causing the soil and groundwater in this area to become contaminated. Processes undertaken in this area further contributed to the contamination. Lockheed Martin discharged wastes from oil filled transformers, and drained industrial wastewaters and process discharges directly to soil in this area.

40.     Between 1958 and 1964, Lockheed Martin operated an incinerator in an area used for assembling and testing nuclear capable Pershing Ballistic Missiles. This area was also used to dump equipment, printed circuit boards, scrap metal, and toxic contaminants from 1958 to 1998.

41.     From 1958 to 1967, Lockheed Martin dumped 5,180 tons of metallic hydroxide sludge and other hazardous wastes in an unlined 3.5 acre landfill in the central area of the facility.

42.     In the late 1960's and early 1970's, Lockheed Martin dug shallow unlined trenches across 8 acres of land on the west-central portion of the Orlando Facility, and

filled the trenches with 1,700 cubic feet of toxic sludge and 3,700 tons of other hazardous wastes.

43.     In the early 1970's, Lockheed Martin dug shallow unlined trenches across 3.5 acres on the western boundary of the Orlando Facility and filled the trenches with 1,200 cubic feet of toxic sludge. Lockheed Martin then constructed a canal, called the New-Over Canal, that received wastes from these trenches and carried them off in surface waters.

44.     From 1973 to 1983, Lockheed Martin dumped 7,800 tons of hazardous wastes in an 11-acre landfill on the Southeast portion of the Orlando Facility. Three sludge ponds adjacent to the landfill were filled to capacity with sludges, including metal hydroxide sludge generated from spent plating solutions and cyanide bearing wastes. A large "sludge cake" was also disposed at this site.

45.     In 1981 and 1982, Lockheed Martin dug shallow unlined ditches across 5 acres on the south-central portion of the Orlando Facility, and filled them with 1,900 tons of hazardous wastes.

46.     For many years prior to 1985, Lockheed Martin collected, stored, and transported toxic wastes from the Orlando Facility's Microelectronics Center in an inaccessible and complicated maze of underground piping and solvent holding tanks. Lockheed Martin operated this collection system for many years despite the piping being in a state of disrepair and leaking highly toxic wastes into soil and groundwater.

47.     These activities, along with others undertaken by Lockheed Martin at the Orlando Facility, have resulted in extensive contamination of soil and groundwater

throughout the site. There are, and have been, numerous plumes of highly contaminated groundwater underneath the Orlando Facility. Additionally, large areas of highly toxic soil exist, and have existed, throughout the Orlando Facility.

48.     Additionally, Lockheed Martin's ongoing operations from 1958 to the present have utilized large volumes of VOCs, hazardous air pollutants, and other toxic substances. These operations have resulted in the emission of numerous tons of harmful chemicals each year, and Plaintiff to be exposed to and inhale these harmful chemicals.

## C.     CONTAMINATION LOCKHEED MARTIN DUMPED INTO THE SOIL, GROUNDWATER, AND AIR AT THE ORLANDO FACILITY

49.     Trichloroethylene ("TCE") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 28,000 ppb, TCE has a sweet odor similar to ether or chloroform.[1] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of TCE are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of TCE detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, liver,

---

[1] EPA Fact Sheet—TCE, January 2017. https://19january2017snapshot.epa.gov/sites/production/files/2016-09/documents/trichloroethylene.pdf

kidneys, immune system, endocrine system, reproductive system, neurological defects, developmental defects, and the injuries suffered by Plaintiff herein.[2] TCE is a potent human carcinogen. It is classified by the International Agency for Research on Cancer ("IARC") as "carcinogenic to humans" and classified as a "known human carcinogen" by the U.S. Department of Health and Human Services ("HHS"). The U.S. Environmental Protection Agency ("EPA") has characterized TCE as "likely to be carcinogenic to humans by all routes of exposure".[3] TCE can cause numerous types of cancer, including but not limited to, kidney cancer, liver cancer, malignant lymphoma, non-Hodgkin's lymphoma, leukemia, testicular cancer, lung tumors, and the injuries suffered by Plaintiff herein.[4]

50.     Tetrachloroethylene ("PCE") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 1,000 ppb, TCE has a sharp, sweet odor.[5] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of PCE are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of PCE detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not

---

[2] ATSDR Toxicological Profile for TCE, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp19.pdf
[3] ATSDR Toxicological Profile for TCE, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp19.pdf
[4] ATSDR Toxicological Profile for TCE, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp19.pdf
[5] EPA Fact Sheet—PCE, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/tetrachloroethylene.pdf

limited to, damage and toxicity to the nervous system, liver, kidneys, reproductive system, unborn children, brain chemistry, developmental defects and the injuries suffered by Plaintiff herein.[6] PCE is a potent human carcinogen. It is classified by the IARC as "probably carcinogenic to humans", and EPA has characterized PCE as "likely to be carcinogenic to humans by all routes of exposure".[7] PCE can cause numerous types of cancer, including but not limited to, bladder cancer, multiple myeloma, non-Hodgkin's lymphoma, liver cancer, kidney cancer, cancers of the blood system, and the injuries suffered by Plaintiff herein.[8]

51.     1,1,1-Trichloroethane ("Methyl Chloroform"), is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 120,000 ppb, Methyl Chloroform has a sharp, sweet odor similar to chloroform.[9] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Methyl Chloroform are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Methyl Chloroform detected at the Orlando Facility can cause harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to,

---

[6] ATSDR Toxicological Profile for PCE, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp18.pdf
[7] ATSDR Toxicological Profile for PCE, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp18.pdf
[8] ATSDR Toxicological Profile for PCE, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp18.pdf
[9] EPA Fact Sheet— Methyl Chloroform, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/methyl-chloroform.pdf

damage to the nervous system, liver, kidneys, reproductive system, unborn children, and the injuries suffered by Plaintiff herein.[10]

52.     Vinyl Chloride is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 3,000,000 ppb, Vinyl Chloride has a mild, sweet odor.[11] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Vinyl Chloride are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Vinyl Chloride detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, cardiovascular system, lungs, liver, kidneys, reproductive system, unborn children, nerve damage, and the injuries suffered by Plaintiff herein.[12] Vinyl Chloride is a potent human carcinogen. It is classified by the IARC as "carcinogenic to humans", and EPA has characterized PCE as "a human carcinogen".[13] Vinyl Chloride can cause numerous types of cancer, including but not limited to, liver cancer, brain cancer, breast cancer, hematopoietic cancers, and the injuries suffered by Plaintiff herein.[14]

---

[10] ATSDR Toxicological Profile for Methyl Chloroform, July 2006. https://www.atsdr.cdc.gov/toxprofiles/tp70.pdf
[11] ATSDR Toxicological Profile for Vinyl Chloride, July 2006. https://www.atsdr.cdc.gov/toxprofiles/tp20.pdf
[12] ATSDR Toxicological Profile for Vinyl Chloride, July 2006. https://www.atsdr.cdc.gov/toxprofiles/tp20.pdf
[13] ATSDR Toxicological Profile for Vinyl Chloride, July 2006. https://www.atsdr.cdc.gov/toxprofiles/tp20.pdf
[14] ATSDR Toxicological Profile for Vinyl Chloride, July 2006. https://www.atsdr.cdc.gov/toxprofiles/tp20.pdf

53.     Methylene Chloride is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 200,000 ppb, Methylene Chloride has a mild, sweet odor.[15] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Methylene Chloride are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Methylene Chloride detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the liver, kidneys, ocular system, unborn children, nervous system, cardiovascular system, lungs, and the injuries suffered by Plaintiff herein.[16] Methylene Chloride is a potent carcinogen. EPA has characterized Methylene Chloride as "a probable cancer causing agent in humans".[17] Methylene Chloride can cause numerous types of cancer, including but not limited to, lung cancer, liver cancer, breast cancer, mouth cancer, and the injuries suffered by Plaintiff herein.[18]

54.     Toluene is a VOC that is found naturally in crude oil. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 2,140

---

[15] ATSDR Toxicological Profile for Methylene Chloride, September 2000.
https://www.atsdr.cdc.gov/toxprofiles/tp14.pdf
[16] ATSDR Toxicological Profile for Methylene Chloride, September 2000.
https://www.atsdr.cdc.gov/toxprofiles/tp14.pdf
[17] ATSDR Toxicological Profile for Methylene Chloride, September 2000.
https://www.atsdr.cdc.gov/toxprofiles/tp14.pdf
[18] ATSDR Toxicological Profile for Methylene Chloride, September 2000.
https://www.atsdr.cdc.gov/toxprofiles/tp14.pdf

ppb, Toluene has a sweet, pungent odor.[19] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Toluene are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Toluene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, brain, immune system, kidney, liver, lungs, reproductive system, unborn children, developmental defects, and the injuries suffered by Plaintiff herein.[20]

55.     Benzene is a VOC that is found naturally in crude oil. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 60,000 ppb, Benzene has a sweet odor.[21] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Benzene are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Benzene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and

---

[19] ATSDR Toxicological Profile for Toluene, June 2017. https://www.atsdr.cdc.gov/toxprofiles/tp56.pdf
[20] ATSDR Toxicological Profile for Toluene, June 2017. https://www.atsdr.cdc.gov/toxprofiles/tp56.pdf
[21] ATSDR Toxicological Profile for Benzene, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp3.pdf

toxicity to the blood, bone marrow, immune system, reproductive system, unborn children and the injuries suffered by Plaintiff herein.[22] Benzene is a potent human carcinogen. It is classified by the HHS as a "known carcinogen"; IARC and EPA have both determined that benzene is "carcinogenic to humans", and EPA has characterized Benzene as "a human carcinogen".[23] Benzene can cause numerous types of cancer, including but not limited to, leukemia, and the injuries suffered by Plaintiff herein.[24]

56.     Chlorobenzene is an artificial VOC that does not occur in nature. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Chlorobenzene are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Chlorobenzene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation or ingestion. These harmful effects include, but are not limited to, damage and toxicity to the blood, bone marrow, liver, kidneys, immune system, nervous system, and the injuries suffered by Plaintiff herein.[25]

57.     Ethylbenzene is a VOC that is found naturally in coal tar. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 2,300 ppb, Ethylbenzene has a sweet, gas-like odor.[26] Because it is volatile, it readily

---

[22] ATSDR Toxicological Profile for Benzene, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp3.pdf
[23] ATSDR Toxicological Profile for Benzene, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp3.pdf
[24] ATSDR Toxicological Profile for Benzene, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp3.pdf
[25] ATSDR Toxicological Profile for Chlorobenzene, December 2019. https://www.atsdr.cdc.gov/toxprofiles/tp131.pdf
[26] ATSDR Toxicological Profile for Ethylbenzene, November 2010. https://www.atsdr.cdc.gov/toxprofiles/tp110.pdf

converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Ethylbenzene are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Ethylbenzene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the inner ear and hearing, kidney, respiratory system, nervous system, eyes, blood, and the injuries suffered by Plaintiff herein.[27]

58.     1,2-dichlorobenzene ("1,2-DCB") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 50,000 ppb, 1,2-DCB has a pleasant, aromatic odor.[28] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,2-DCB are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,2-DCB detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the lungs, liver, blood, kidneys, thyroid, pituitary gland, nervous system, and the injuries suffered by Plaintiff herein.[29]

---

[27] ATSDR Toxicological Profile for Ethylbenzene, November 2010.
https://www.atsdr.cdc.gov/toxprofiles/tp110.pdf; EPA Fact Sheet—Ethylbenzene, January 2017.
https://www.epa.gov/sites/production/files/2016-09/documents/ethylbenzene.pdf
[28] ATSDR Toxicological Profile for DCBs, August 2006. https://www.atsdr.cdc.gov/toxprofiles/tp10.pdf
[29] ATSDR Toxicological Profile for DCBs, August 2006. https://www.atsdr.cdc.gov/toxprofiles/tp10.pdf

59.     1,3-dichlorobenzene ("1,3-DCB") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 50,000 ppb, 1,3-DCB has a pleasant, aromatic odor.[30] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,3-DCB are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,3-DCB detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the lungs, liver, blood, kidneys, thyroid, pituitary gland, nervous system, and the injuries suffered by Plaintiff herein.[31]

60.     Carbon Disulfide is a VOC that is used to produce rubber chemicals and pesticides. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Carbon Disulfide are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Carbon Disulfide detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the respiratory system, brain, nervous system, blood, liver, kidneys, eyes,

---

[30] ATSDR Toxicological Profile for DCBs, August 2006. https://www.atsdr.cdc.gov/toxprofiles/tp10.pdf
[31] ATSDR Toxicological Profile for DCBs, August 2006. https://www.atsdr.cdc.gov/toxprofiles/tp10.pdf

cardiovascular system, reproductive system, unborn children, developmental problems and the injuries suffered by Plaintiff herein.[32]

61.     Carbon Tetrachloride is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 10,000 ppb, Carbon Tetrachloride has a sweet odor.[33] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Carbon Tetrachloride are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Carbon Tetrachloride detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the liver, kidneys, nervous system, respiratory system, unborn children, reproductive system and the injuries suffered by Plaintiff herein.[34] Carbon tetrachloride is a potent human carcinogen. EPA has characterized Carbon Tetrachloride as "a probable human carcinogen".[35] Carbon Tetrachloride can cause numerous types of cancer, including, liver cancer and the injuries suffered by Plaintiff herein.[36]

---

[32] EPA Fact Sheet—Carbon Disulfide, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/carbon-disulfide.pdf
[33] EPA Fact Sheet—Carbon Tetrachloride, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/carbon-tetrachloride.pdf
[34] EPA Fact Sheet—Carbon Tetrachloride, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/carbon-tetrachloride.pdf
[35] EPA Fact Sheet—Carbon Tetrachloride, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/carbon-tetrachloride.pdf
[36] EPA Fact Sheet—Carbon Tetrachloride, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/carbon-tetrachloride.pdf

62.     1,1-Dichloroethane ("1,1-DCA") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 120,000 ppb, 1,1-DCA has a mild, sweet odor similar to ether.[37] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,1-DCA are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,1-DCA detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, cardiovascular system, kidneys, unborn children, and the injuries suffered by Plaintiff herein.[38] 1,1-DCA can cause cancer, and is classified by EPA as "a possible human carcinogen".[39] 1,1-DCA can cause numerous types of cancer, including but not limited to, cancer of the blood vessel walls, breast cancer, liver cancer, endometrial cancer, and the injuries suffered by Plaintiff herein.[40]

63.     1,2-Dichloroethane ("1,2-DCA") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 6,000 ppb, 1,2-DCA has a mild, sweet odor similar to

---

[37] EPA Fact Sheet—1,1-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylidene-dichloride.pdf
[38] EPA Fact Sheet—1,1-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylidene-dichloride.pdf
[39] EPA Fact Sheet—1,1-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylidene-dichloride.pdf
[40] EPA Fact Sheet—1,1-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylidene-dichloride.pdf

chloroform.[41] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,2-DCA are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,2-DCA detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, cardiovascular system, respiratory system, liver, kidneys, immune system, and the injuries suffered by Plaintiff herein.[42] 1,2-DCA is a potent human carcinogen, and has been classified by EPA as "a probable human carcinogen".[43] 1,2-DCA can cause numerous types of cancer, including but not limited to, colon cancer, rectal cancer, stomach cancer, blood vessel wall cancer, breast cancer, lung cancer, endometrial cancer, liver cancer, and the injuries suffered by Plaintiff herein.[44]

64.    1,1-Dichloroethene ("1,1-DCE") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 190,000 ppb, 1,1-DCE has a mild, sweet odor similar to chloroform.[45] Because it is volatile, it readily converts to a gas and travels through air

---

[41] EPA Fact Sheet—1,2-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylene-dichloride.pdf
[42] EPA Fact Sheet—1,2-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylene-dichloride.pdf
[43] EPA Fact Sheet—1,2-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylene-dichloride.pdf
[44] EPA Fact Sheet—1,2-DCA, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/ethylene-dichloride.pdf
[45] EPA Fact Sheet—1,1-DCE, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/vinylidene-chloride.pdf

with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,1-DCE are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,1-DCE detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, liver, kidneys, lungs, and the injuries suffered by Plaintiff herein.[46] 1,1-DCE can cause numerous types of cancer, including but not limited to, kidney cancer, breast cancer, and the injuries suffered by Plaintiff herein.[47]

65.     1,2-Dichloroethene ("1,2-DCE") is an artificial VOC that does not occur in nature. It is colorless and odorless.[48] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,2-DCE are, and have been, present in the soil and groundwater at the Orlando Facility. 1,2-DCE has also been found at the Orlando Facility in as Cis-1,2-DCE and Trans-1,2-DCE forms. The concentrations of 1,2-DCE detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to,

---

[46] EPA Fact Sheet—1,2-DCE, Date Unknown. https://archive.epa.gov/water/archive/web/pdf/archived-technical-fact-sheet-on-1-2-dichloroethylene.pdf
[47] EPA Fact Sheet—1,2-DCE, Date Unknown. https://archive.epa.gov/water/archive/web/pdf/archived-technical-fact-sheet-on-1-2-dichloroethylene.pdf
[48] EPA Fact Sheet—1,2-DCE, Date Unknown. https://archive.epa.gov/water/archive/web/pdf/archived-technical-fact-sheet-on-1-2-dichloroethylene.pdf

damage and toxicity to the nervous system, liver, circulatory system, and the injuries suffered by Plaintiff herein.[49]

66.     1,1,2-Trichloroethane ("1,1,2-TCA") is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,1,2-TCA are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,1,2-TCA detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, respiratory system, liver, kidneys, immune system, and the injuries suffered by Plaintiff herein.[50] 1,1,2-TCA causes cancer, and has been classified by EPA as "possibly carcinogenic to humans".[51] 1,1,2-TCA can cause numerous types of cancer, including but not limited to, liver cancer, adrenal cancer, and the injuries suffered by Plaintiff herein.[52]

67.     Chloroform is a VOC that readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of chloroform are, and

---

[49] EPA Fact Sheet—1,2-DCE, Date Unknown. https://archive.epa.gov/water/archive/web/pdf/archived-technical-fact-sheet-on-1-2-dichloroethylene.pdf
[50] ATSDR Toxicological Profile for 1,1,2-TCA, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp148.pdf
[51] ATSDR Toxicological Profile for 1,1,2-TCA, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp148.pdf
[52] ATSDR Toxicological Profile for 1,1,2-TCA, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp148.pdf

have been, present in the soil and groundwater at the Orlando Facility. The concentrations of chloroform detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the liver, blood, kidney, nervous system, reproductive system, unborn children, developmental defects, and the injuries suffered by Plaintiff herein.[53] Chloroform is a potent carcinogen, and has been classified by EPA as "likely to be carcinogenic to humans by all routes of exposure".[54] Chloroform can cause numerous types of cancer, including but not limited to, intestinal cancer, rectal cancer, bladder cancer, kidney cancer, liver cancer and the injuries suffered by Plaintiff herein.[55]

68.    1,2-Dichloropropane is an artificial VOC that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 250 ppb, 1,2-Dichloropropane has a chloroform-like odor.[56] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,2-Dichloropropane are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,2-Dichloropropane detected at the Orlando Facility can cause extremely harmful

---

[53] EPA Fact Sheet—Chloroform, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/chloroform.pdf
[54] EPA Fact Sheet—Chloroform, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/chloroform.pdf
[55] EPA Fact Sheet—Chloroform, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/chloroform.pdf
[56] EPA Fact Sheet—1,2-Dichloropropane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/propylene-dichloride.pdf

effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, blood, liver, reproductive system, and the injuries suffered by Plaintiff herein.[57] 1,2-Dichloropropane is a potent carcinogen and has been classified by EPA as a "probable human carcinogen".[58] 1,2-Dichloropropane can cause numerous types of cancer, including but not limited to, breast cancer, liver cancer and the injuries suffered by Plaintiff herein.[59]

69.     Dichlorobromomethane is a VOC that is colorless and odorless. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Dichlorobromomethane are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of Dichlorobromomethane detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation or ingestion. These harmful effects include, but are not limited to, damage and toxicity to the liver, kidneys, immune system, unborn children, developmental defects, and the injuries suffered by Plaintiff herein.[60] Dichlorobromomethane is a potent human carcinogen. EPA characterizes

---

[57] EPA Fact Sheet—1,2-Dichloropropane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/propylene-dichloride.pdf
[58] EPA Fact Sheet—1,2-Dichloropropane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/propylene-dichloride.pdf
[59] EPA Fact Sheet—1,2-Dichloropropane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/propylene-dichloride.pdf
[60] ATSDR Toxicological Profile for Dichlorobromomethane, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp129.pdf

Dichlorobromomethane as "a probable human carcinogen".[61] Dichlorobromomethane can cause numerous types of cancer, including but not limited to, rectal cancer, kidney cancer, intestinal cancer, liver cancer, and the injuries suffered by Plaintiff herein.[62]

70.     Bis(2-ethylhexyl)phthalate ("DEHP") is an artificial VOC that does not occur in nature, and is colorless and odorless. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of DEHP are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of DEHP detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the liver, kidneys, respiratory system, reproductive system, immune system, unborn children, developmental defects, and the injuries suffered by Plaintiff herein.[63] DEHP causes cancer, and has been classified by EPA as a "probable human carcinogen".[64] DEHP can cause numerous types of cancer, including but not limited

---

[61] ATSDR Toxicological Profile for Dichlorobromomethane, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp129.pdf
[62] ATSDR Toxicological Profile for Dichlorobromomethane, June 2019. https://www.atsdr.cdc.gov/toxprofiles/tp129.pdf
[63] EPA Fact Sheet—DEHP, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/bis-2-ethylhexyl-phthalate.pdf; ATSDR Toxicological Profile for DEHP, December 2019. https://www.atsdr.cdc.gov/toxprofiles/tp9.pdf
[64] EPA Fact Sheet—DEHP, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/bis-2-ethylhexyl-phthalate.pdf

to, liver cancer, pancreatic cancer, testicular cancer and the injuries suffered by Plaintiff herein.[65]

71.     Xylene is a VOC that is colorless and odorless unless present in extremely high and dangerous concentrations. Above 1,100 ppb, Xylene has a sweet odor.[66] Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Xylene are, and have been, present in the soil and groundwater at the Orlando Facility. Xylene has also been found at the Orlando Facility in as m-Xylene, p-Xylene, and o-Xylene. The concentrations of Xylene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation or ingestion. These harmful effects include, but are not limited to, damage and toxicity to the respiratory system, gastrointestinal system, nervous system, cardiovascular system, kidneys, unborn children, developmental defects and the injuries suffered by Plaintiff herein.[67]

72.     Methylnaphthalene is a VOC that is found naturally in crude oil. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Methylnaphthalene are, and have been, present

---

[65] EPA Fact Sheet—DEHP, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/bis-2-ethylhexyl-phthalate.pdf; ATSDR Toxicological Profile for DEHP, December 2019. https://www.atsdr.cdc.gov/toxprofiles/tp9.pdf
[66] EPA Fact Sheet—Xylene, January 2017. https://19january2017snapshot.epa.gov/sites/production/files/2016-09/documents/xylenes.pdf
[67] EPA Fact Sheet—Xylene, January 2017. https://19january2017snapshot.epa.gov/sites/production/files/2016-09/documents/xylenes.pdf

in the soil and groundwater at the Orlando Facility. The concentrations of Methylnaphthalene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the blood, gastrointestinal system, respiratory system, and the injuries suffered by Plaintiff herein.[68] Methylnaphthalene can cause cancer and is classified by EPA as "a possible human carcinogen".[69]   Methylnaphthalene can cause numerous types of cancer, including but not limited to, lung cancer, throat cancer, colorectal cancer, and the injuries suffered by Plaintiff herein.[70]

73.    Benzo(a)pyrene is a VOC that is found naturally in crude oil. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of Benzo(a)pyrene are, and have been, present in the soil and groundwater at the Orlando Facility. Two related compounds with similar effects, Benzo(a)anthracene and Benzo(b)fluoranthene, have also been detected at the Orlando Facility at dangerously high concentrations. The concentrations of Benzo(a)pyrene detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These

---

[68] ATSDR Toxicological Profile for Methylnaphthalene, August 2005. https://www.atsdr.cdc.gov/toxprofiles/tp67.pdf
[69] ATSDR Toxicological Profile for Methylnaphthalene, August 2005. https://www.atsdr.cdc.gov/toxprofiles/tp67.pdf
[70] ATSDR Toxicological Profile for Methylnaphthalene, August 2005. https://www.atsdr.cdc.gov/toxprofiles/tp67.pdf

harmful effects include, but are not limited to, damage and toxicity to the nervous system, reproductive system, immune system, unborn children, developmental defects, and the injuries suffered by Plaintiff herein.[71] Benzo(a)pyrene is a potent human carcinogen, and is classified by IARC as "a known human carcinogen".[72] Benzo(a)pyrene can cause numerous types of cancer, including but not limited to, gastrointestinal cancer, liver cancer, kidney cancer, throat cancer, lung cancer, and the injuries suffered by Plaintiff herein.[73]

74.     Polychlorinated biphenyls ("PCBs") are artificial VOCs that do not occur in nature. They are colorless and odorless. Because they are volatile, PCBs readily converts to a gas and travels through air with wind. PCBs also move through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of PCBs are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of PCBs detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the respiratory system, gastrointestinal system, liver, kidney, blood, nervous system, endocrine system, and the injuries suffered by Plaintiff

---

[71] EPA Toxicological Review of Benzo(a)pyrene, January 2017.
https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0136tr.pdf
[72] EPA Toxicological Review of Benzo(a)pyrene, January 2017.
https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0136tr.pdf
[73] EPA Toxicological Review of Benzo(a)pyrene, January 2017.
https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0136tr.pdf

herein.[74] PCBs are potent human carcinogens, and both EPA and IARC have determined that PCBs are "probable human carcinogens".[75] PCBs can cause numerous types of cancer, including but not limited to, liver cancer, intestinal cancer, skin cancer, gallbladder cancer, non-Hodgkin's lymphoma, testicular cancer, prostate cancer, pancreatic cancer, lung cancer, ovarian cancer, uterine cancer, throat cancer, pancreatic cancer, uterine cancer, and the injuries suffered by Plaintiff herein.[76]

75.     Dichlorodiphenyltrichloroethane ("DDT") is an artificial VOC that does not occur in nature. It is colorless and odorless. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of DDT are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of DDT detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to unborn children, birth and developmental defects, type 2 diabetes mellitus, liver, nervous system, and the injuries suffered by Plaintiff herein.[77] DDT is a potent carcinogen, and has been classified by IARC and EPA as a "probable human

---

[74] ATSDR Toxicological Profile for PCBs, November 2000. https://www.atsdr.cdc.gov/toxprofiles/tp17.pdf; Addendum to ATSDR Toxicological Profile for PCBs, April 2011. https://www.atsdr.cdc.gov/toxprofiles/pcbs_addendum.pdf
[75] ATSDR Toxicological Profile for PCBs, November 2000. https://www.atsdr.cdc.gov/toxprofiles/tp17.pdf; Addendum to ATSDR Toxicological Profile for PCBs, April 2011. https://www.atsdr.cdc.gov/toxprofiles/pcbs_addendum.pdf
[76] ATSDR Toxicological Profile for PCBs, November 2000. https://www.atsdr.cdc.gov/toxprofiles/tp17.pdf; Addendum to ATSDR Toxicological Profile for PCBs, April 2011. https://www.atsdr.cdc.gov/toxprofiles/pcbs_addendum.pdf
[77] ATSDR Toxicological Profile for DDT, December 2019. https://www.atsdr.cdc.gov/toxprofiles/tp35.pdf

carcinogen".[78] DDT can cause numerous types of cancer, including but not limited to, liver cancer, lung cancer, and the injuries suffered by Plaintiff herein.[79]

76.     1,4-Dioxane is an artificial VOC that does not occur in nature. It is colorless and odorless. Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of 1,4-Dioxane are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of 1,4-Dioxane detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the liver, kidneys, respiratory system, brain, and the injuries suffered by Plaintiff herein.[80] 1,4-Dioxane causes cancer and has been classified by IARC and EPA as a "probable human carcinogen".[81] 1,4-Dioxane can cause numerous types of cancer, including but not limited to, liver cancer, nasal cancer, gallbladder cancer, and the injuries suffered by Plaintiff herein.[82]

77.     Dioxins are persistent environmental pollutants used in pesticides such as Agent Orange.  Because dioxins are persistent, they remain in the environment for long

---

[78] ATSDR Toxicological Profile for DDT, December 2019. https://www.atsdr.cdc.gov/toxprofiles/tp35.pdf
[79] ATSDR Toxicological Profile for DDT, December 2019. https://www.atsdr.cdc.gov/toxprofiles/tp35.pdf
[80] EPA Fact Sheet—1,4-Dioxane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/1-4-dioxane.pdf
[81] EPA Fact Sheet—1,4-Dioxane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/1-4-dioxane.pdf
[82] EPA Fact Sheet—1,4-Dioxane, January 2017. https://www.epa.gov/sites/production/files/2016-09/documents/1-4-dioxane.pdf

periods of time and bioaccumulate in human bodies.[83] Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of dioxins are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of dioxins detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the epidermis, blood, liver, metabolic system, immune system, reproductive system, unborn children, thyroid, developmental defects, and the injuries suffered by Plaintiff herein.[84] Dioxins cause cancer, and have been classified by IARC and EPA as "probable human carcinogens".[85] Dioxins can cause numerous types of cancer, including but not limited to, liver cancer, thyroid cancer, skin cancer, and the injuries suffered by Plaintiff herein.[86]

78.    Perfluoroalkyls ("PFAS") are persistent environmental pollutants used in plating and electronics manufacturing. Because PFAS are persistent, they remain in the environment for long periods of time and bioaccumulate in human bodies.[87] Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of PFAS are, and have been, present in the soil and groundwater at the Orlando Facility. PFAS have also been detected at unsafe levels at the Orlando Facility as perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). The

---

[83] ATSDR Toxicological Profile for Dioxins, December 1998. https://www.atsdr.cdc.gov/toxprofiles/tp104.pdf
[84] ATSDR Toxicological Profile for Dioxins, December 1998. https://www.atsdr.cdc.gov/toxprofiles/tp104.pdf
[85] ATSDR Toxicological Profile for Dioxins, December 1998. https://www.atsdr.cdc.gov/toxprofiles/tp104.pdf
[86] ATSDR Toxicological Profile for PFAS, December 2018. https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf
[87] ATSDR Toxicological Profile for PFAS, December 2018. https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf

concentrations of PFAS detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation or ingestion. These harmful effects include, but are not limited to, damage and toxicity to the liver, immune system, metabolic system, thyroid, respiratory system, reproductive system, unborn children, developmental defects, and the injuries suffered by Plaintiff herein.[88] PFAS can cause cancer, and have been classified by IARC and EPA as "possible human carcinogens".[89] PFAS can cause numerous types of cancer, including but not limited to, testicular cancer, kidney cancer, liver cancer, pancreatic cancer, and the injuries suffered by Plaintiff herein.[90]

79.     Cadmium is a heavy metal used in electroplating. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of cadmium are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of cadmium detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the lungs, respiratory system, kidneys, gastrointestinal system, musculoskeletal system, liver, nervous system, reproductive system, blood, immune system, and the injuries suffered by Plaintiff herein.[91] Cadmium is a potent human carcinogen. It has been classified by HHS as a "known human carcinogen" and by IARC as "carcinogenic to

---

[88] ATSDR Toxicological Profile for PFAS, December 2018. https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf
[89] ATSDR Toxicological Profile for PFAS, December 2018. https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf
[90] ATSDR Toxicological Profile for PFAS, December 2018. https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf
[91] ATSDR Toxicological Profile for Cadmium, September 2012. https://www.atsdr.cdc.gov/toxprofiles/tp5.pdf

humans".[92] Cadmium can cause numerous types of cancer, including but not limited to, lung cancer, prostate cancer and the injuries suffered by Plaintiff herein.[93]

80.    Chromium is a heavy metal used in plating operations. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of chromium are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of chromium detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the lungs, respiratory system, stomach, gastrointestinal system, blood, reproductive system, immune system, reproductive system, epidermis, eyes, and the injuries suffered by Plaintiff herein.[94] Chromium is a potent human carcinogen. It has been classified by EPA as a "known human carcinogen" and by IARC as "carcinogenic to humans".[95] Chromium can cause numerous types of cancer, including but not limited to, gastrointestinal cancer, mouth cancer, lung cancer and the injuries suffered by Plaintiff herein.[96]

81.    Lead is a heavy metal used in the manufacture of munitions. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of lead are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of lead detected at the Orlando Facility can cause extremely

---

[92] ATSDR Toxicological Profile for Cadmium, September 2012. https://www.atsdr.cdc.gov/toxprofiles/tp5.pdf
[93] ATSDR Toxicological Profile for Cadmium, September 2012. https://www.atsdr.cdc.gov/toxprofiles/tp5.pdf
[94] ATSDR Toxicological Profile for Chromium, September 2012. https://www.atsdr.cdc.gov/toxprofiles/tp7.pdf
[95] ATSDR Toxicological Profile for Chromium, September 2012. https://www.atsdr.cdc.gov/toxprofiles/tp7.pdf
[96] ATSDR Toxicological Profile for Chromium, September 2012. https://www.atsdr.cdc.gov/toxprofiles/tp7.pdf

harmful effects whether exposure occurs through inhalation, ingestion or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, kidneys, cardiovascular system, blood, immune system, reproductive system, unborn children, developmental defects, respiratory system, endocrine system, liver, musculoskeletal system, gastrointestinal system, and the injuries suffered by Plaintiff herein.[97] The toxic effects of lead have been observed in every organ system studied.[98] Lead is a potent human carcinogen. It has been classified by EPA as a "probable human carcinogen" and by IARC as "probably carcinogenic to humans".[99] Lead can cause numerous types of cancer, including but not limited to, lung cancer, respiratory tract cancer, stomach cancer, gastrointestinal cancer, throat cancer, glioma, and the injuries suffered by Plaintiff herein.[100]

82.     Arsenic is a heavy metal used in rat poison, ammunition and semiconductors. Due to Lockheed Martin's unreasonable, reckless, and egregious conduct, dangerous levels of arsenic are, and have been, present in the soil and groundwater at the Orlando Facility. The concentrations of arsenic detected at the Orlando Facility can cause extremely harmful effects whether exposure occurs through inhalation, ingestion or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the epidermis, gastrointestinal system, blood, cardiovascular system, nervous system, respiratory system, unborn children, kidneys,

---

[97] ATSDR Toxicological Profile for Lead, August 2020. https://www.atsdr.cdc.gov/toxprofiles/tp13.pdf
[98] ATSDR Toxicological Profile for Lead, August 2020. https://www.atsdr.cdc.gov/toxprofiles/tp13.pdf
[99] ATSDR Toxicological Profile for Lead, August 2020. https://www.atsdr.cdc.gov/toxprofiles/tp13.pdf
[100] ATSDR Toxicological Profile for Lead, August 2020. https://www.atsdr.cdc.gov/toxprofiles/tp13.pdf

bladder, and the injuries suffered by Plaintiff herein.[101] Arsenic is a potent human carcinogen. It has been classified by EPA as a "known human carcinogen" and by IARC as "carcinogenic to humans".[102] Arsenic can cause numerous types of cancer, including but not limited to, skin cancer, liver cancer, bladder cancer, lung cancer, and the injuries suffered by Plaintiff herein.[103]

83.     In addition to these specifically named contaminants, Lockheed Martin has caused the release of numerous additional toxins and hazardous air pollutants, as will be proven at trial.

## D.     LOCKHEED MARTIN EXPOSES THE COMMUNITY TO TOXIC WASTE

84. Lockheed Martin was well aware of the risks to human health posed by the toxic materials it used and handled at the Orlando Facility, including those described herein. Lockheed Martin knew, or should have known, that mismanaging and mishandling these harmful chemicals could pose egregious risks of exposure, and result in debilitating, life-changing, and fatal illnesses and diseases.

85.     Instead of taking proper, or in some cases, any, precautions to protect against potential exposures, Lockheed Martin created a toxic stew of contamination at the Orlando Facility. This contamination is the result of years of callous and reckless

---

[101] ATSDR Toxicological Profile for Arsenic, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp2.pdf
[102] ATSDR Toxicological Profile for Arsenic, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp2.pdf
[103] ATSDR Toxicological Profile for Arsenic, August 2007. https://www.atsdr.cdc.gov/toxprofiles/tp2.pdf

indifference to the health and safety of the environment, and individuals living and working nearby and around the Orlando Facility.

86.     These failures are Lockheed Martin's original sin, from which further harm to Plaintiff flowed.

87.     Lockheed Martin clearly knew, or at the very least should have known, that burying toxic wastes in trenches, transporting toxic wastes in leaking and inaccessible piping, dumping toxic sludge in ponds, and engaging in the other reckless conduct described herein, would cause profound and widespread soil and groundwater contamination throughout the Orlando Facility.

88.     Lockheed Martin also knew, or should have known, that the contamination resulting from these activities, and present at the Orlando Facility, would pose significant health risks to people living and working nearby, including Plaintiff.

89.     Lockheed Martin knew, or should have known, that thousands of people lived and worked near the Orlando Facility, and that it was completely inappropriate to use and handle such hazardous contaminants at this location.

90.     Lockheed Martin knew, or should have known, that Plaintiff, and others working and living nearby, would be exposed to Lockheed Martin's contamination through inhaling, ingesting, and coming into dermal contact with contaminated soils that are regularly disrupted by the operations at the Orlando Facility, and thereafter become airborne and travel offsite.

91.     Lockheed Martin also knew, or should have known, that Plaintiff, and others working and living nearby, would be exposed to Lockheed Martin's contamination through inhaling VOCs that off-gassed from the soil and groundwater.

92.     Lockheed Martin knew, or should have known, that Plaintiff would be exposed to Lockheed Martin's contamination by coming into contact with contaminants carried offsite through groundwater migration.

93.     Lockheed Martin also knew, or should have known, that Plaintiff would be exposed to contamination by Lockheed Martin's continuing operation of the Orlando facility, and the resulting generation and emission of toxic wastes. Lockheed knew, or should have known, that emitting numerous tons of toxins and hazardous air pollutants each year would cause Plaintiff to inhale such contaminants.

94.     Lockheed Martin knew, or should have known that, because of the dangerous constituents it dumped into the soil, air and groundwater, the toxic nature of emissions from ongoing operations, and the high levels of contamination resulting from Lockheed Martin's recklessness, such offsite exposures could, and would, cause severe and debilitating illnesses and diseases to individuals living and working near and around the Orlando Facility.

95.     Nevertheless, Lockheed Martin continued to expose nearby residents and workers, including Plaintiff, to toxic contaminants from the Orlando Facility.

96.     Lockheed Martin's efforts to treat the soil and groundwater at the Orlando Facility increased the risks of exposure to toxic contaminants to Plaintiff and others living and working nearby.

42

97.     Lockheed Martin utilized contaminated groundwater for spray irrigation, causing underground contaminants to make contact with air, vaporize, be carried offsite with winds, and inhaled by Plaintiff and others in the vicinity of the Orlando Facility.

98.     Lockheed Martin installed numerous Air Stripping Towers, Soil Vapor Extraction Systems, and Air Sparging Systems at the Orlando Facility. These technologies remove harmful contaminants from soil and groundwater by inducing a phase change that causes VOCs to become gaseous. These systems then separate the gaseous VOCs from the soil or groundwater that they are treating.

99.     However, these treatment systems do not destroy the harmful contaminants, they simply separate contaminants from the treated soil or groundwater. To prevent exposing nearby residents and workers to the harmful toxic gases remaining after the soil or groundwater is treated, it is necessary to collect, contain, and seal the remaining toxic gases in airtight containers.

100.    Lockheed Martin failed to contain the toxic gases remaining after the soil and groundwater was treated with Air Stripping Towers, Soil Vapor Extraction Systems, and Air Sparging Systems at the Orlando Facility. Instead, Lockheed Martin recklessly expelled these toxic gases directly into the air breathed by Plaintiff and others in the vicinity of the Orlando Facility.

101.    By venting these toxic gases directly into the air, at low heights, Lockheed Martin unearthed high levels of toxic contamination that was present below the ground surface, concentrated the contamination into potent and dangerous gases, and injected

the contamination directly into the air supply for the community near and around the Orlando Facility.

102.   Additionally, Lockheed Martin's ongoing operations caused numerous additional tons of hazardous air pollutants to be released into the air breathed by Plaintiff and others in the vicinity of the Orlando Facility.

103.   Over the years, Lockheed Martin sold certain parcels of the Orlando Facility, and near to the Orlando Facility, for redevelopment, further increasing the number of individuals who would be exposed to Lockheed Martin's contamination. After selling these parcels, Lockheed Martin remained responsible for and continued to engage in activities that caused its contamination in soil and groundwater to become airborne, and inhaled by Plaintiff and others living and working near the Orlando Facility.

104.   In December 1998, Lockheed Martin sold southern areas of the Orlando Facility to UCPM. The areas acquired by 3UCPM included several contaminated landfills described above (see Figure B).



F3igure B—The Universal Parcel

105.    As a condition of the sale, Lockheed Martin agreed to remain responsible for addressing the contamination from Lockheed Martin's prior activities in the UCPM parcel, to pay for contamination activities on the UCPM parcel, and to assist with the execution of all such activities.

106.    In return, UCPM agreed to continue contamination activities made necessary by Lockheed Martin's original sin. If Lockheed Martin had not dumped thousands of tons of extremely toxic pollutants into the soil and groundwater to begin with, such contamination activities would not have been undertaken.

45

107.   Lockheed Martin and UCPM had a community of interest in the contamination activities undertaken on the UCPM parcel, and shared in the potential liabilities arising therefrom. They each retained authority to control the contamination activities undertaken thereon and were responsible for sharing in its costs. They would each share in profits achieved if contamination activities could be continued for little cost, remove the contamination from the parcels owned by each defendant, or cease before the contamination was completely removed. The extraction of contaminants from soil and groundwater constituted profits, since the extraction of contaminants would eliminate or mitigate liabilities that Lockheed Martin and UCPM shared in. As a result, the contamination activities on the UCPM parcel were a joint venture between Lockheed Martin and UCPM.

108.   After acquiring the southern parcel in Dec. 1998 UCPM and Lockheed Martin continued the contamination activities begun by Lockheed Martin, including the use of Air Strippers, Air Sparging, and Soil Vapor Extraction Systems, that caused pollutants to become airborne and inhaled, ingested, and dermally contacted by Plaintiff. Over the years additional similar systems were added to the UCPM parcel by UCPM and Lockheed Martin.

109.   In 2000-2001, Lockheed Martin, NBCUniversal and UCPM built the UCPM Treatment System. This system included several air strippers and an 80 acre sprayfield. Like the other contamination activities undertaken at the Orlando Facility, the UCPM Treatment system did not utilize appropriate control equipment, but instead

dumped lethal contaminants directly into the air after they were extracted from soil and groundwater.

110.    The UCPM Treatment System was used by Lockheed Martin and UCPM to treat contamination located on both the Lockheed Martin and Universal owned parcels of the Orlando Facility. Lockheed Martin and UCPM retained joint right of control over the UCPM Treatment System, financial responsibility for the UCPM Treatment System, and joint interests in its functioning and ownership and as result operated UCPM Treatment System as a joint venture.

111.    Plaintiff, and others in the community, did inhale, ingest and come into dermal contact with contaminated soils originating from the Orlando Facility, airborne contaminants resulting from the volatilization of contaminated soil and groundwater originating from the Orlando Facility, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued operation of the Orlando Facility, and as a result suffered injuries, as described herein.

112.    Lockheed Martin's continuing operation of the Orlando Facility, and the resultant continued release of toxic contaminants, has caused additional exposures to Plaintiff, and has caused or contributed to the injuries suffered by Plaintiff.

113.    Plaintiff's toxic exposures, and those of others in the community, were increased, and exacerbated by Lockheed Martin's decision to extract harmful chemicals from soil and groundwater at the Orlando Facility, concentrate the contaminants in gaseous form, and vent the contaminants directly into the air that Plaintiff breathed. Plaintiff, and others in the community, did inhale toxins emitted

from the Air Stripping Towers, Soil Vapor Extraction Systems, and Air Sparging Systems at the Orlando Facility, and as a result suffered injuries, as described herein.

## E.   PLAINTIFF WAS EXPOSED TO LOCKHEED MARTIN'S TOXIC WASTES, AND SUFFERED EGREGIOUS BODILY HARM

114.   Plaintiff, and others in the community, did inhale, ingest and come into dermal contact with contaminated soils, groundwater, and airborne toxic wastes originating from the Orlando Facility.

115.   Plaintiff's exposures to VOCs, including PCE, TCE, and PCBs, and those of others in the community, were increased, and exacerbated by Lockheed Martin's decision to extract harmful chemicals from soil and groundwater at the Orlando Facility, concentrate the contaminants in gaseous form, and vent the contaminants directly into the air that Plaintiff breathed. Plaintiff, and others in the community, did inhale concentrated VOCs emitted from the Air Stripping Towers, Soil Vapor Extraction Systems, and Air Sparging Systems at the Orlando Facility.

116.   At all relevant times, Lockheed Martin's ongoing operations at the Orlando Facility resulted in the generation of additional toxic wastes. Plaintiff, and others in the community, did inhale, ingest, and come into dermal contact with toxic wastes generated by Lockheed Martin's ongoing operations at the Orlando Facility.

117.   As a result of these exposures to Lockheed Martin's toxic wastes, Plaintiff suffered injuries, as described herein.

118.    Lester Oliver, Jr, lived within the vicinity of the Orlando Facility from 1972 until 1989. As a result of his exposure to Lockheed Martin's toxic wastes, Lester Oliver, Jr, was diagnosed with B-cell Lymphoma. He suffered extensive bodily injury, pain and suffering, sorrow and mental anguish, and received extensive treatments for his conditions. Both his and his family member's lives were changed forever by defendants' wrongful conduct. Lester Oliver, Jr, passed away in 2021.

119.    As a result of his injuries and death, Baretta J. Oliver has lost the companionship, comfort, guidance, kindly offices and advices of her husband Lester Oliver, Jr.

120.    As personal representative of the estate of Lester Oliver, Jr, Baretta J. Oliver seeks all damages available under Florida's Wrongful Death Act, and/or all damages available through Survival actions under Fl. St. 46.021.

## COUNT I—STRICT LIABILITY; ULTRAHAZARDOUS ACTIVITY
### *(On behalf of Plaintiff, against Lockheed Martin)*

121.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122.    Defendant Lockheed Martin's handling, storage, use, and disposal of the highly toxic contaminants described herein constituted ultrahazardous activities.

123.    Handling, storing, utilizing, disposing and emitting the highly toxic contaminants described herein is abnormally dangerous and cannot be made safe by the exercise of the utmost care. The operations at the Orlando Facility resulted in

emissions of toxic substances into nearby homes and businesses, which posed a high degree of risk to Plaintiff.

124.   There is a reasonable likelihood that the handling, storing, utilizing, disposing, and emitting the toxic substances described herein will result in life-threatening cancer and other devastating illnesses, diseases and disease processes. These risks cannot be eliminated as long as these toxic contaminants are handled, stored, utilized, disposed of, or emitted near populated areas.

125.   Manufacturing ballistic missiles, lethal weaponry, war equipment, and component parts is not a manner of common usage but is an extraordinarily rare and unusual enterprise. Likewise, it was completely inappropriate for Defendant Lockheed Martin to carry out these activities and use, handle, store, dispose of and emit toxic contaminants near populated areas.

126.   The emissions of the toxic substances described herein near homes and businesses is likely to result in great harm to persons and property.

127.   Defendant Lockheed Martin's handling, storing, utilizing, disposing and emitting of the toxic contaminants described herein created a high degree of risk of harm to those who live in the surrounding area and substantially increased their risk of developing cancer and other devastating illnesses, diseases and disease processes.

128.   The activities conducted by Defendant Lockheed Martin are not a manner of common usage, are exceedingly dangerous and offer little or no value to the surrounding community.

129.    Because these activities are ultrahazardous, Defendant Lockheed Martin is strictly liable for any injuries proximately resulting therefrom.

130.    As a direct and proximate result of Defendant Lockheed Martin's ultrahazardous activities and the exposure to toxic contaminants resulting therefrom, Plaintiff was exposed to Defendant's toxic wastes, and suffered injuries, as described herein.

131.    Defendant Lockheed Martin is jointly liable for damages sought by Plaintiff.

132.    Defendant Lockheed Martin knew or ought to have known that its conduct would naturally and probably result in injury to others, including Plaintiff and others in the vicinity of the Orlando Facility. Defendant Lockheed Martin carried on and continued such conduct in reckless disregard of the consequences. Punitive damages are thus warranted.

133.    By reason of the foregoing, Defendant Lockheed Martin is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT II—STRICT LIABILITY; Fla. Stat. §376.313
### *(On behalf of Plaintiff, against Lockheed Martin)*

134.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

135.   Defendant Lockheed Martin owned and operated the Orlando Facility, and caused discharges of the contaminants described herein, and polluting conditions which are prohibited by Fla. Stat. §§376.30, 376.302 *et seq.*

136.   Defendant Lockheed Martin discharged hazardous substances, petroleum, petroleum products, and solvents, as described herein, in violation of Fla. Stat. §§376.30, 376.302 *et seq.*

137.   Defendant Lockheed Martin's discharges of contaminants, hazardous substances, solvents, petroleum, petroleum products, and creation of polluting conditions, in violation of Fla. Stat. §376.30 *et seq.*, caused Plaintiff to be exposed to Defendant's toxic wastes, and suffer injuries, as described herein

138.   By reason of the foregoing, Defendant is strictly liable to Plaintiff for compensatory damages resulting therefrom, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

139.   Defendant Lockheed Martin is jointly liable for damages sought by Plaintiff.

### COUNT III—PUBLIC NUISANCE
*(On behalf of Plaintiff, against Lockheed Martin)*

140.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

141.   Plaintiff has a common right to breathe clean air and enjoy a clean environment without dangerous levels of harmful toxic wastes.

142.   Defendant Lockheed Martin's unreasonable and reckless use, storage, transport, handling, disposal and emission of toxic wastes at its Orlando Facility substantially and unreasonably infringes upon and transgresses this public right.

143.   By unreasonably and recklessly using, storing, transporting, handling, disposing, and emitting toxic wastes at its Orlando Facility, Defendant Lockheed Martin is maintaining a place that tends to annoy the community or injure the health of the surrounding community.

144.   By unreasonably and recklessly using, storing, transporting, handling, disposing, and emitting toxic wastes at its Orlando Facility, Defendant Lockheed Martin is maintaining a place where the laws of the State of Florida are violated.

145.   At all times relevant hereto, Defendant Lockheed Martin knew these toxic wastes to be hazardous and harmful to human beings.

146.   Defendant Lockheed Martin knew or should have known that the levels of toxic wastes it emitted at its Orlando Facility would have a deleterious effect upon the health, safety, and well-being of people living and working in nearby areas.

147.   Defendant Lockheed Martin's operation of its Orlando Facility caused those who live and work in the surrounding area to inhale, ingest, and come into dermal contact with high levels of harmful toxic wastes on a routine and constant basis, causing a substantially elevated risk of cancer and other debilitating diseases.

148.   As a proximate result of Defendant Lockheed Martin's operations at its Orlando Facility, Plaintiff's and the general public's common right to breathe clean air

and enjoy a clean environment without dangerous levels of harmful toxic wastes was eliminated and/or severely diminished.

149.    As a proximate result of Defendant Lockheed Martin's operation of its Orlando Facility, dangerous levels of harmful toxic wastes continuously invaded and contaminated the areas surrounding Plaintiff's workplace and residences, thereby exposing them harmful toxic wastes.

150.    As a direct and proximate result of Defendant Lockheed Martin's creation of a public nuisance and the exposure to harmful toxic wastes resulting therefrom, Plaintiff suffered injuries, as described herein.

151.    Defendant Lockheed Martin is jointly liable for damages sought by Plaintiff.

152.    Defendant Lockheed Martin's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

153.    By reason of the foregoing, Defendant Lockheed Martin is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT IV—PRIVATE NUISANCE
### *(On behalf of Plaintiff, against Lockheed Martin)*

154.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

155.   At all times relevant hereto, Defendant Lockheed Martin knew its toxic wastes to be hazardous and harmful to human beings.

156.   Defendant Lockheed Martin's unreasonable and reckless storage, use, transport, handling, disposal and emission of toxic wastes from its Orlando Facility constituted an unreasonable invasion of Plaintiff's interests and rights of reasonable use and enjoyment of property and their rights to enjoyment of life free from consuming toxic wastes.

157.   Defendant Lockheed Martin's unreasonable and reckless storage, use, disposal and emission of toxic wastes from its Orlando Facility constituted negligent or reckless conduct.

158.   Defendant Lockheed Martin's unreasonable and reckless storage, use, disposal and emission of toxic wastes from its Orlando Facility was an ultrahazardous or abnormally dangerous condition or activity and thus constitutes an absolute nuisance, or nuisance per se, for which Defendant is strictly liable.

159.   Defendant Lockheed Martin's operation of its Orlando Facility caused those who live and work in the surrounding area to breathe, ingest, and come into dermal contact with high levels of toxic contaminants on a routine and constant basis, causing a substantially elevated risk of cancer and other debilitating disease.

160.   As a proximate result of the Defendant Lockheed Martin's operation of its Orlando Facility, Plaintiff's common rights to enjoy a clean environment, without dangerous levels of toxic wastes, were infringed and/or severely diminished.

161.    As a proximate result of Defendant Lockheed Martin's operation of its Orlando Facility, toxic contaminants continuously invaded and contaminated the areas surrounding Plaintiff's places of employment and residences, thereby exposing them to toxic wastes.

162.    As a direct and proximate result of Defendant Lockheed Martin's creation of a private nuisance and the exposure to toxic wastes resulting therefrom, Plaintiff suffered injuries, as described herein.

163.    Defendant Lockheed Martin is jointly liable for damages sought by Plaintiff.

164.    Defendant Lockheed Martin's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

165.    By reason of the foregoing, Defendant Lockheed Martin is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT V—NEGLIGENCE
### *(On behalf of Plaintiff, against Lockheed Martin)*

166.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

167.    Defendant Lockheed Martin owed Plaintiff a duty to operate its Orlando Facility in a manner which would not cause Plaintiff injury or harm. Plaintiff was a

foreseeable victim located within the scope of the risk created by the Defendant Lockheed Martin's unreasonable and reckless conduct.

168.   Defendant Lockheed Martin negligently breached its duty of care by mismanaging toxic contaminants in a way that would cause severe and widespread contamination at its Orlando Facility, emitting dangerous levels of toxic wastes from its Orlando Facility, failing to take steps to minimize or eliminate the release of toxic wastes from its Orlando Facility, failing to utilize alternative processes that would not result in widespread contamination of the release of toxic wastes, failing to use proper materials in constructing the facility, failing to institute proper procedures and training, releasing toxic wastes into a heavily populated community, and further increasing the number of people exposed to its contamination by selling parcels of the Orlando Facility for redevelopment.

169.   Defendant Lockheed Martin owed Plaintiff a duty of reasonable care commensurate with the risk of operating the Orlando Facility.

170.   Defendant Lockheed Martin negligently breached its duty by, among other things:

      a.  Filling crude unlined trenches and ponds with toxic wastes;

      b.  Transporting toxic wastes through defective lines, piping systems, and broken concrete troughs;

      c.  Draining toxic wastes directly onto soil;

      d.  Emitting dangerous amounts of toxic wastes into the air;

e.  Failing to employ safe methods to adequately control, reduce, or eliminate toxic waste emissions from its Orlando Facility;

f.  Failing to use alternative practices and procedures which would not result in the emission of toxic wastes into neighboring communities;

g.  Emitting dangerous amounts of toxic wastes into a populated area;

h.  Failing to warn neighboring residents and workers that they were being exposed to toxic wastes and of the consequent risks of disease the residents and workers acquired because of that exposure;

i.  Failing to take steps to minimize or eliminate the release of toxic wastes, by failing to utilize alternative procedures that would not result in the release of toxic wastes;

j.  Failing to install closed loop treatment technologies which would contain toxic wastes in sealed containers;

k.  Failing to alert government agencies to the nature of its operations and emissions, and failing to comply with appropriate permitting and regulatory requirements;

l.  Failing to use proper materials in constructing and maintaining the Orlando Facility; and

m. Failing to institute proper procedures and training to prevent releases of toxic wastes.

171.   As a direct and proximate result of Defendant Lockheed Martin's negligence, Defendant Lockheed Martin emitted toxic substances near homes and businesses, posing a high degree of risk to the surrounding community, including Plaintiff.

172.   As a direct and proximate result of Defendant Lockheed Martin's negligence, Plaintiff was exposed to, and inhaled, ingested, and dermally contacted Defendant Lockheed Martin's toxic wastes. As a result of the exposure to, inhalation of, ingestion of, and dermal contact with Lockheed Martin's toxic wastes, Plaintiff suffered injuries, as described herein.

173.   Defendant Lockheed Martin is jointly liable for damages sought by Plaintiff.

174.   At all times relevant, Defendant Lockheed Martin owed Plaintiff a duty to refrain from willful, wanton, reckless and outrageous conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, property, and well-being of Plaintiff.

175.   Upon information and belief, Defendant Lockheed Martin was, at all times relevant, aware that the toxic wastes it was storing, handling disposing and emitting at its Orlando Facility were highly carcinogenic, capable of causing debilitating diseases, and/or otherwise extremely harmful to humans.

59

176.   Upon information and belief, Defendant Lockheed Martin was, at all times relevant, aware of the considerable health risks associated with the mismanagement and emissions of its toxic wastes at the Orlando Facility, including the risk of causing various forms of cancer and other debilitating diseases in the surrounding population.

177.   Upon information and belief, Defendant Lockheed Martin was, at all times relevant, aware that their handling, storage, use, disposal, and treatment of toxic wastes at the Orlando Facility actually resulted in the unreasonably dangerous emissions of toxic wastes into the surrounding communities, homes and businesses, which posed a high degree of risk to Plaintiff.

178.   Defendant Lockheed Martin's failures in these and other respects, in the face of actual knowledge regarding the risks of unreasonable levels of toxic contamination, constitutes willful, wanton, reckless and outrageous conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff.

179.   Defendant Lockheed Martin's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

180.   By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT VI—NEGLIGENCE

*(On behalf of Plaintiff against Defendant UCPM)*

181.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

182.   UCPM owed Plaintiff a duty to operate its parcel at the Orlando Facility in a manner which would not cause Plaintiff injury or harm. Plaintiff was a foreseeable victim located within the scope of the risk created by the UCPM's unreasonable and reckless conduct.

183.   UCPM negligently breached its duty of care by emitting dangerous levels of Lockheed Martin's toxic wastes from their parcel at the Orlando Facility, failing to take steps to minimize or eliminate the release of Lockheed Martin's toxic wastes from their parcel at the Orlando Facility, failing to utilize alternative processes that would not result in the release of Lockheed Martin's toxic wastes, failing to use proper materials in constructing their contamination equipment, failing to institute proper policies, procedures and training, releasing Lockheed Martin's toxic wastes into a heavily populated community, and entering into a joint venture with Lockheed Martin to operate contamination equipment and continue contamination activities.

184.   UCPM owed Plaintiff a duty of reasonable care commensurate with the risk of operating its parcel at the Orlando Facility.

185.   UCPM negligently breached their duty by, among other things*:*

       a.  Emitting dangerous amounts of Lockheed Martin's toxic wastes into the air;

b. Failing to employ safe methods to adequately control, reduce, or eliminate toxic waste emissions from their parcel at the Orlando Facility;

c. Failing to use alternative practices and procedures which would not result in the emission of Lockheed Martin's toxic wastes into neighboring communities;

d. Emitting dangerous amounts of Lockheed Martin's toxic wastes into a populated area;

e. Failing to warn neighboring residents and workers that they were being exposed to Lockheed Martin's toxic wastes and of the consequent risks of disease the residents and workers acquired because of that exposure;

f. Failing to take steps to minimize or eliminate the release of Lockheed Martin's toxic wastes, by failing to utilize alternative procedures that would not result in the release of Lockheed Martin's toxic wastes;

g. Failing to install closed loop treatment technologies which would contain Lockheed Martin's toxic wastes in sealed containers;

h. Failing to use proper materials in constructing and maintaining their contamination equipment at the Orlando Facility; and

i. Entering into a joint venture with Lockheed Martin to operate contamination equipment and continue contamination activities.

62

186.    As a direct and proximate result of UCPM's negligence, and their resulting exposure to Defendant Lockheed Martin's toxic wastes, Plaintiff suffered injuries, as described herein.

187.    However, none of UCPM's acts would have occurred or caused harm to Plaintiff if not for Lockheed Martin's original sin: dumping thousands of tons of highly toxic wastes into the soil and groundwater at the Orlando Facility to begin with.

188.    All of the UCPM's negligent acts were undertaken in a joint venture with Lockheed Martin.

189.    Defendant Lockheed Martin is jointly liable for damages sought by Plaintiff.

190.    UCPM's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

191.    By reason of the foregoing, UCPM is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT VII—LOSS OF CONSORTIUM
### *(On behalf of Plaintiff against Defendant Lockheed Martin)*

192.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

193.    As a result of the tortious, negligent, and reckless behavior by Defendant Lockheed Martin, described herein, Plaintiff's close familial relations have suffered devastating injuries and disease. This has caused Plaintiff mental anguish and a loss of

companionship, solace, comfort, fellowship, society and assistance in their close familial relationships.

194.    Defendant Lockheed Martin's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

195.    By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT VIII—LOSS OF CONSORTIUM
### *(On behalf of Plaintiff Defendant UCPM)*

196.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120, and 178-188 as if fully set forth herein.

197.    As a result of the tortious, negligent, and reckless behavior by UCPM, described herein, Plaintiff's close familial relations have suffered devastating injuries and disease. This has caused Plaintiff mental anguish and a loss of companionship, solace, comfort, fellowship, society and assistance in their close familial relationships.

198.    UCPM's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

199.    By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT IX—WRONGFUL DEATH

200.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

201.    Plaintiff is the personal representative of decedent, as described herein.

202.    In the alternative to any available damages that could be recovered on behalf of decedents through the other causes of action pled on decedents' behalf, Plaintiff seek all damages recoverable under the Florida Wrongful Death Act.

203.    As a result of the tortious, negligent, and reckless behavior by Defendant Lockheed Martin, described herein, Plaintiff's close familial relations have suffered devastating injuries and disease. This has caused Plaintiff mental anguish and a loss of companionship, solace, comfort, fellowship, society and assistance in their close familial relationships.

204.    Defendant Lockheed Martin's conduct was willful, wanton, and in reckless disregard for the rights of others, including Plaintiff, and punitive damages are thus warranted.

205.    By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages, in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1.    For an award of damages, including nominal and compensatory damages, including past and future pain and suffering, past and future

treatment costs, and other amounts as allowed by law and in an amount to be determined;

2. For an award of punitive damages as allowed by law and in an amount to be determined;

3. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

4. For prejudgment interest on all amounts awarded; and

5. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a jury trial as to all issues so triable.

Date: November 29, 2023

Respectfully submitted,

*/s/ T. Michael Morgan*
T. Michael Morgan
FL Bar No. 62229
mmorgan@ForThePeople.com
**MORGAN & MORGAN, P.A.**
20 N Orange Ave., Suite 1600
Orlando, FL 32801
P: (407) 418-2031
F: (407) 245-3384

*Counsel for Plaintiff*